WILLIS WARNER, Appellant, v. MODERN WOOD-
MEN OF AMERICA, Respondent.

Kansas City Court of Appeals, June 18, 1906.

1. **BENEFIT SOCIETY: Reinstatement: Lapse Member: Physi-
cian's Certificate: Examination: Collusion.** A benefit society's
by-law required a lapse member seeking reinstatement to fur-
nish a certificate of good health from the camp physician
upon a prescribed form, after a medical examination, etc. A
lapse member spent three hours in other business with the
camp physician and subsequently on the same day wrote for
a certificate which the physician gave without examination.
*Held*, the camp physician was the agent of the member whose
duty it was to have himself examined and secure the certificate,
and he could not be reinstated until he had submitted a truth-
ful certificate since the by-law was intended to protect the
society from collusion between the member and the camp
physician.

2. ——: ——: ——: ——: Evidence: Health., The evidence is held to show that at the time the lapse member sent in his health certificate and dues, he knew that he was suffering from a serious disease.

3. **TRIAL PRACTICE: Demurrer to Evidence: Court's Duty.** All courts have the inherent power to prevent the consummation of an injustice through the instrumentality of the jury by sustaining a demurrer to the plaintiff's case.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

AFFIRMED.

*F. W. Reed* and *Shannon & Shannon* for appellant.

(1) Officers of the local subordinate lodges, or camps, of the defendant society are its agents. McMahon v. Maccabees, 151 Mo. 522; Frame v. W. O. W., 67 Mo. App. 127. (2) If plaintiff is prevented from completing his contract by any unwarranted act or default of defendant, he may recover as if the contract were completed. Jarrell v. Farris, 6 Mo. 159; Little v. Mercer, 9 Mo. 218; McCullough v. Baker, 47 Mo. 401; Baker v. Railroad, 19 Mo. App. 321; Baker v. Railroad, 34 Mo. App. 98. (3) Forfeitures are not favored, and laws, rules and stipulations relative thereto will, if possible, be so construed as to avoid a forfeiture, and the deceased, being in suspension more than sixty days, but less than six months, was only required, "if in good health," to furnish "a certificate of good health from his camp physician" and to "pay all arrearages of every kind." Connelly v. Ben. Soc., 43 Mo. App. 283; McFarland v. Accident Assn., 124 Mo. 204; 17 Am. and Eng. Ency. Law, 14, 20. (4) Deceased made payment to the clerk of defendant's local camp, of which he was a member, at the moment of depositing a money order therefor in the mail. Kenyon v. Mut. Aid Assn., 122 N. Y. 247; McMahon v. Maccabees, 151 Mo. 522. (5)

Deceased having furnished a certificate of good health, whether or not he was in good health at time of remitting his dues and assessments was a question for the jury. Boward v. Bankers Union, 94 Mo. App. 451-2.

*Benj. D. Smith, Thomas Hackney* and *Barbour & McDavid* for respondent.

(1) This is not a question of the forfeiture of the membership and the policy held in the order. It is a question whether a membership and policy, admitted to have been previously forfeited, has been restored to life and force. (2) It being admitted that the deceased had been legally and regularly suspended more than sixty days prior to his death, he could only have been reinstated by complying with the by-laws relative to reinstatement, and particularly with section 52 of such by-laws. This he did not do. McLaughlin v. Supreme Council (Mass.), 86 N. E. 344; Andette v. L' Union of St. Joseph (Mass.), 59 N. E. 668; Lyon v. Supreme Assembly, 26 N. E. 236; Graves v. M. W. A. (Minn.), 89 N. W. 6; Elder v. Grand Lodge (Minn.), 82 N. W. 987; Smith v. Supreme Lodge, etc. (Iowa), 99 N. W. 552; W. O. W. v. Rothschild (Texas), 40 S. W. 553; A. O. U. W. v. King (Ind.), 38 N. E. 352; Supreme Lodge v. Keener (Texas), 25 S. W. 1084; Joyce on Ins., sec. 1276; Bacon on Ins., sec. 3858; Harvey v. Grand Lodge, 50 Mo. App. 472. (3) The certificate given by Dr. Roper did not comply with section 52 of the by-laws in evidence. (a) Because no medical examination was in fact made. (b) Because such examination was not approved by the head physician. Both of these things were requisite to reinstatement, which fact Dr. Warner knew. Dr. Roper had no right to waive any requirement of the by-laws, and neither the deceased nor his beneficiaries can claim any benefits because of such attempted waiver. Lloyd v. M. W. A., 113 Mo. App. 19; Boyce v. Royal Circle, 99 Mo. App. 349; Lavin v. A. O.

U. W., 104 Mo. App. 1; Borgraffe v. Knights of Honor, 22 Mo. App. 141; Chadwick v. Order of Triple Alliance, 56 Mo. App. 463; Harvey v. Grand Lodge, 50 Mo. App. 477; McMahan v. Maccabees, 151 Mo. 522; Smith v. W. O. W., 179 Mo. 136; Lyon v. Royal Society, etc., 26 N. E. 236; Modern Woodmen v. Tevis, 117 Fed. 369. (4) The peremptory instruction given by the court at the close of plaintiff's evidence was proper for the reason that the court could not have permitted any verdict rendered for plaintiff on such evidence to stand. Warner v. Railroad, 178 Mo. 125; Asphalt Co. v. Transit Co., 102 Mo. App. 469; Bank v. Railroad, 98 Mo. App. 330; Pope v. Boyce, 98 Mo. 527; Hite v. Railroad, 130 Mo. 132.

BROADDUS, P. J.—The cause of action set forth in the petition is to enforce the payment of a benefit certificate issued by the defendant to Dr. J. A. Warner, who died at about twelve o'clock m. February 16, 1904, at Reeds, Missouri, his place of residence. The certificate was issued in April, 1901, for $1,000, payable on the death of the insured to his two daughters, the plaintiff being their assignee. The deceased failed to pay his assessment in November, 1903, and thereby, admittedly, became suspended in accordance with the by-laws of the association, from and after December 1, 1903. He was a member of the local camp of the defendant's order at Sarcoxie, Missouri, and was subject to be reinstated by complying with section 52 of defendant's by-laws. The question for our consideration is, was he restored as a member of the association prior to the time of his sickness and death? Dr. Roper, who resided at Sarcoxie and was camp physician of Strawberry Camp at Sarcoxie, on February 9, 1904, went to the town of Reeds for the purpose of visiting a sick patient with deceased. They were together on that day for about three hours; at two o'clock, the end of the

time, Dr. Roper returned to Sarcoxie. On or about February 11th, Dr. Roper received from the deceased a letter asking for a health certificate, and stating that he had forgotten to mention the matter to him when they were together previously. He at once wrote the following certificate:

"Sarcoxie, Missouri, Feb. 11, 1904.

"This is to certify that I have this day examined Dr. J. A. Warner, a member of Strawberry Camp at Sarcoxie, Missouri, and find him in good and perfect health, and recommend his reinstatement in our order.

"W. H. ROPER, M. D.,

"Med. Ex. for Strawberry Camp No. ——."

Dr Roper mailed this certificate on the day it was written to Dr. Warner at Reeds, but it appears that it did not reach him until late on Saturday, February 13th. On the evening of the next day, Dr. Warner was unwell and went to bed and from that time until his death he kept his room. On the next day, the 14th of February, plaintiff, the father of the deceased, bought a money order of the amount of $3.50 and mailed it to the clerk of the camp at Sarcoxie, which reached said clerk on the morning of February the 15th. On the morning of the last-named day Dr. Wise of Carthage was called in professionally to see deceased. He went to see him again about noon of the next day, but when he arrived Dr. Warner was dead. There is nothing to show that on the day Dr. Warner received the certificate of good health he was in other than good health. It was shown upon the part of plaintiff that from the time deceased kept to his room he was not confined generally to his bed, but was up part of the time, talked to his friends and prescribed for his patients up to within fifteen minutes of his death.

Section 52 of the by-laws is as follows, omitting certain parts: "A beneficial member in suspension for more than sixty days and less than six months, on ac-

count of non-payment of assessments, fines or dues, if in good health . . . may be reinstated upon furnishing a certificate of good health from his camp physician . . . upon form prescribed by the executive council, after medical examination by him made, duly approved by the head physician, and upon payment of all arrearages of every kind. . . ." Under this section, the deceased was entitled to stand as reinstated if in good health upon doing certain things, viz.; by furnishing a certificate of the medical examiner of his camp as to his good health, after medical examination by· him made, duly approved by the head physician of the order, and the payment of all arrearages to the association.

Do the facts show that deceased complied with the by-law in question? As it was a part of the contract of insurance, its provisions should have been substantially complied with. It is an admitted fact that the medical examiner made no examination of the deceased, and did not know his condition of health at the time he made the certificate. It is, however, urged that the medical doctor waived such examination. In support of this view, we are cited to a number of cases, some of which we will notice. In Cauveren v. Ancient Order of Pyramids, 98 Mo. App. 433, "Deceased after his default in his dues made payment of such arrears to the local scribe who promised to send him a blank 'health slip' to be filled out and returned to him, which he failed to do. This practice appeared in other cases without objection by the company. Held, a waiver of requirement of such certificate at the time of paying the arrearages." That was a case where the health certificate was required to be made out by the member himself, and as it was a practice of the association to waive such certificates the court very properly held that it amounted to a waiver. In Boward v. Bankers Union, 94 Mo. App. 442, the suspended member had only to pay his arrearages if in good health to be reinstated. No certificate of good health was required. It was there-

fore a question of fact for the jury to determine whether at the time he paid his arrearages he was in good health. In Andre v. Modern Woodmen, 102 Mo. App. 377, it was shown that the association was not in the habit of exacting prompt payment by members of their dues. It was held as applied to that case a waiver. And the holding is similar in Cline v. Sovereign Camp Woodmen of the World, 86 S. W. 501; McMahon v. Maccabees, 151 Mo. 522.

But there was no evidence in this case of waiver except as to the prompt payment of dues, which has nothing to do with the issue, as there was no delay in that respect after the certificate of health was made unless the failure of the medical examiner to examine deceased was such a waiver; and we find no evidence that such was his custom. It seems to us that this was a matter that the medical examiner could not waive. He was not an agent of the association with authority to manage its business affairs in any way whatever. He was simply a person designated by the laws of the order, which were a part of the contract, to examine and make certificates of health and he could only perform his duty in that respect in the mode provided by the by-laws, even as to the form of his certificates. Besides, although he was the medical examiner of the association, he was not its agent in making the health certificate; he was on the contrary the agent of the deceased in that particular respect. If in good health, it was the duty of the deceased to have had himself examined by the medical examiner and a truthful certificate of the condition of his health made by such examiner for the approval of the head physician of the order. Every requirement of the by-law, that was necessary in order that he be reinstated as a member, was a duty resting on him and not upon the order, save and except that of the approval by the head physician of his health certificate. First, it was his duty to obtain from the medical examiner an examination and a

certificate; second, to pay his arrearages, upon which he stood reinstated when the head physician should have approved of such certificate. The latter condition perhaps might be waived by the association accepting a member as reinstated, as for instance, receiving his dues and allowing him to participate in the business of the local camp as other members. And it may be said that a suspended member, such as the deceased was, would in law be considered as reinstated if he should pay all arrearages and procure the required health certificate of the medical examiner, without the approval of the head physician, if the latter should arbitrarily and without just cause withhold his approval. But we think it is clear that a suspended member should not be considered as reinstated until he has submitted a truthful health certificate for approval to the head physician. This provision in the by-law is not without meaning, as it was evidently intended to protect the order against such cases as the one we are now considering, a case of collusion between the suspended member and the medical examiner.

We do not wish to be understood as holding that had the said examiner made an examination of the deceased when he did and found him in good health and so certified, and deceased had paid up his dues, that his subsequent sickness, if it was such, would have been a justifiable cause for a refusal of the head physician to withhold his approval. When a suspended member has in good faith complied with every condition of the by-law providing for his reinstatement, the society cannot refuse him as a member, notwithstanding his subsequent sickness. In this case, deceased failed in two of the most important particulars while in good health, viz.: obtaining a proper certificate of health and payment of all dues. It is no answer to say that there was evidence of good health at the time the certificate was made, and that at the time his dues were paid he was apparently suffering from a mere cold, when in

fact he was afflicted with the sickness that resulted in his death in so short a time afterwards. Dr. Wise, who was available as a witness, was called upon to attend deceased the day before his death and who came a second time to see him, but arrived too late to see him alive, perhaps might have thrown some light upon the nature of his affliction. But he was not called.

It may be said that the deceased, although a doctor himself, did not anticipate his coming sickness, but we are impressed with the conviction that at the time the plaintiff, the father of deceased, procured the money order to pay the arrearages due the association, grave apprehensions existed in his mind as to his son's condition, which accounts for his haste in making the payment, for it was at this time Dr. Wise was sent for. Whatever may be said as to the condition of Dr. Warner at the time he procured said certificate from Dr. Roper, there can be no question but what the former at the time the arrearages were sent to the local camp knew he was then suffering from a serious disease, which resulted the next day in his death. The facts show beyond all reasonable dispute that deceased was not in good health at all times during which the attempt was made to reinstate him as a member of the association.

Under such a state of facts it is unnecessary to refer to precedents in order to sustain the action of the trial court in directing a verdict for the defendant. Its duty was evident. And it exercised that inherent power which is lodged in all courts to prevent the consummation of an injustice through the instrumentality of a jury.

Affirmed. All concur.